Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VI**

| | | |
|---|---|---|
| Zuleyka Rodríguez Rodríguez<br><br>Recurrida<br><br>vs.<br><br>**Stryker Puerto Rico LLC**, Hyto Insurance, Gaviota Inc.<br><br>Peticionario | TA2026CE00149 | ***CERTIORARI*** procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.: GM2025CV00097<br><br>Sobre: Procedimiento Sumario Bajo Ley Núm. 2 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de febrero de 2026.

Comparece ante nos, Stryker Puerto Rico LLC (Stryker o peticionario), quien presenta recurso de *certiorari* en el que solicita la revocación de la Sentencia Parcial emitida y notificada el 30 de enero 2026, por el Tribunal de Primera Instancia, Sala Superior de Guayama. Mediante el referido dictamen, el foro primario desestimó la reclamación formulada por la señora Zuleyka Rodríguez Rodríguez (Sra. Rodríguez o recurrida) al amparo de la Ley Núm. 80-1976, *infra*, mientras que denegó la solicitud de desestimación en cuanto a la Ley Núm. 3-1942, *infra*.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, expedimos el auto de *certiorari* y confirmamos la Sentencia Parcial recurrida mediante los fundamentos que expondremos a continuación.

**-I-**

El 4 de febrero de 2025, la Sra. Rodríguez presentó una Querella contra Stryker, al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, conocida como la Ley de Procedimiento Sumario de Reclamaciones Laborales (Ley Núm. 2-1961), 32 LPRA sec. 3118 *et seq.*[1] Sostuvo que fue despedida de manera ilegal, en violación de la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, conocida como la Ley Sobre Despidos Injustificados, 29 LPRA sec. 185a *et seq.*, y en contravención de la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, conocida como la Ley de Protección de Madres Obreras, 29 LPRA sec 467 *et seq.*

La Sra. Rodríguez trabajó en Stryker como empleada temporera, asignada a través de la agencia Kelly Services Inc. En o alrededor de los meses de octubre y noviembre de 2023, Stryker llevó a cabo un proceso de conversión de personal. Como parte de dicho proceso, el 1 de noviembre de 2023, se le extendió a la parte recurrida una oferta de empleo para ocupar el puesto de Assembler I como empleada regular de Stryker, efectiva el 4 de diciembre de 2023.[2] La recurrida señaló en su Querella que inició labores en Stryker el 4 de diciembre de 2023, ocupando el puesto de Assembler I hasta que fue despedida el 8 de enero de 2024. Asimismo, expresó que el 5 de enero de 2023 le notificó al peticionario que estaba embarazada. Manifestó que el 20 de diciembre de 2023 el señor Gabriel Rodríguez Escobales, de Recursos Humanos, la contactó y le requirió su tarjeta de identificación y la tarjeta de seguro social, los cuales entregó ese mismo día. Señaló que, el 8 de enero de 2024 fue despedida sin justa causa, motivado por su condición de embarazo. Entre otros

---

[1] Véase, Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada Núm. 1.
[2] Véase, SUMAC TPI, Entrada Núm. 33; Anejo B a las págs. 7-8.

asuntos, reclamó el pago de $2,840.00 por concepto de mesada, a tenor con la Ley Núm.80-1976, *supra*.  A su vez, solicitó una suma no menor a $100,000.00 por el alegado hostigamiento, acoso laboral y discrimen por su condición de embarazo.

Luego de varios trámites procesales, el 10 de noviembre de 2025, Stryker presentó una Moción de Sentencia Sumaria.[3]  En esencia, sostuvo que la reclamación bajo la Ley Núm. 80-1976, *supra*, está prescrita y que la Sra. Rodríguez fue despedida de su empleo dentro de su periodo probatorio, por lo que no es acreedora de los remedios dispuestos en la Ley Núm. 80-1976, *supra*.  Además, adujo que no es de aplicación la Ley Núm. 3-1942, *supra*, debido a que quienes participaron de la decisión y quien notificó la terminación desconocían del estado de embarazo de la Sra. Rodríguez.  De igual forma, manifestó que posee una razón legítima y justificada para la terminación de la Sra. Rodríguez.  Es decir, explicó que, conforme a la legislación federal si un patrono no puede validar si una persona puede trabajar en los Estados Unidos, no tiene otra opción que despedir a la persona.

Por su parte, la Sra. Rodríguez presentó su Oposición a Sentencia Sumaria.[4]  En síntesis, alegó que el peticionario conocía del estado de embarazo de ésta y que ello fue la razón de su despido discriminatorio.  En ese sentido, alegó que todo el mundo, incluyendo el Sr. Gabriel Rodríguez, podía notar su embarazo por su estado físico ("barriga").  Además, explicó que el peticionario le indicó que resolvería el supuesto problema con el Formulario I-9.

Examinadas las posturas de las partes, el 30 de enero de 2026,[5] el foro primario emitió una Sentencia Parcial mediante la cual desestimó la reclamación al amparo de la Ley Núm. 80-1979, *supra*, mientras permanece pendiente la acción en virtud de la Ley

---

[3] Véase, SUMAC TPI, Entrada Núm. 33.
[4] Véase, SUMAC TPI, Entrada Núm. 37.
[5] Notificada el mismo día.

Núm. 3, *supra.* El foro recurrido esbozó los siguientes hechos que no están en controversia:

1. *El 1 de noviembre de 2023, Rodríguez recibió una oferta de empleo de Stryker, para el puesto de Assembler I, con fecha de comienzo el 4 de diciembre de 2023.*
2. *El 4 de diciembre de 2023, Rodríguez firmó un Contrato de Empleo Probatorio.*
3. *El Contrato de Empleo Probatorio establece que Rodríguez iba a estar sujeta a un periodo probatorio, que culminaba el 8 de abril de 2024.*
4. *Al reportarse a trabajar el 4 de diciembre de 2023, Rodríguez fue citada a una reunión grupal de "onboarding", en la que participaron todas las personas que iban a ser contratadas como empleados regulares de Stryker, entre ellos Zuleika Figueroa. Durante dicha reunión, también estuvo presente Gabriel Rodríguez, Gerente de Recursos Humanos.*
5. *Durante el proceso de "onboarding", Gabriel Rodríguez le solicitó a Rodríguez y a otra seis (6) personas, todos los documentos oficiales requeridos por ley para corroborar su identidad y poder completar las formas requeridas bajo las leyes estatales y federales, incluyendo el Formulario I-9.*
6. *El 20 de diciembre de 2023, Gabriel Rodríguez se reunió con la querellante y le notificó que hubo un error en sus documentos, según el formulario de E-Verify.*
7. *El 20 de diciembre de 2023, Rodríguez le notificó un correo electrónico a Gabriel Rodríguez, en el que le proveyó copia de su licencia de conducir y su seguro social.*
8. *El 4 de enero de 2024, Gabriel Rodríguez recibió un correo electrónico, en el quese le informó que en el caso de Rodríguez "[t]here was an I9 issue … that has not been resolved and we need to terminate employment ASAP per the US Goverment. If issues are resolved, we can rehire but we do not have wiggle room in these situations."*
9. *El 8 de enero de 2024, Rodríguez fue despedida de su empleo.*
10. *Durante su deposición, Rodríguez admitió que el propósito del Formulario I-9 es recoger su información personal para poder validar si está autorizada o no para trabajar en Estados Unidos.*
11. *Durante su deposición, Rodríguez admitió que el efecto de que no se pueda validar la información de una persona es que se determine que dicha persona no está autorizada para trabajar.*
12. *Rodríguez tuvo acceso a las políticas y procesos de Stryker, incluyendo el Manual de Empleado de Stryker.*
13. *El cargo de Rodríguez presentado ante la Unidad Anti discrimen del Departamento del Trabajo y Recursos Humanos establece lo siguiente:*

*Luego de haber trabajado por más de un año a través de una agencia de empleo temporeros, el 4 de diciembre*

*de 2023, la querellada me contraté como empleada regular. El 5 de diciembre de 2023, notifiqué en enfermería que estoy embarazada. El 20 de diciembre de 2023, el señor Gabriel Rodriguez, recursos humanos, se comunicó conmigo y me solicitó "id" y tarjeta de seguro social, evidencia que suministré ese mismo día. El 8 de enero de 2024, cuando llegué al empleo el guardia de seguridad no me permite la entrada y me indicó que estacionara afuera de las facilidades y luego me dirigiera a Recursos Humanos. Allí el señor Rodriguez me notificó mi terminación de empleo por según indicó, un error en el registro de mi identificación personal. Según él, yo escribí el número de identificación de otra persona y no el mío. Entiendo que eso no es razón para mi despido, sino un error humano que podía corregirse. Considero que las razones reales para la terminación de empleo están relacionadas con mi embarazo. Por tanto, considero que el patrono incumplió con las disposiciones de la Ley 100 de 30 de junio de 1959, según enmendada, Ley 3 de 13 de marzo de 1942, ¡Ley 69 de 6 de julio de 1985 y el Título VII! de la Ley de Derechos Civiles de 1964, según enmendada. Solicito se me compense por los salarios dejados de percibir, así como los daños ocasionados a mí y mi familia y cualquier beneficio que proceda por Ley.*

Inconforme aún, el 9 de febrero de 2026, la parte peticionaria recurrió ante nos mediante petición de *certiorari*, y plantea la comisión de los siguientes errores:

A. *Erró el TPI al concluir que existían controversias de hechos cuando las mismas son de derecho.*

B. *Erró el TPI al no aplicar la defensa de falta de conocimiento bajo la Ley Núm. 3 cuando la misma quedó incontrovertida.*

C. *Erró el TPI al no desestimar la reclamación bajo la Ley Núm. 3 cuando de sus propias determinaciones de hechos y la prueba admisible incontrovertida surge que Stryker tiene justa causa para el despido de Rodríguez.*

D. *Erró el TPI al ignorar las ofertas incondicionales de empleo notificadas por Stryker a Rodríguez posterior a su despido que, como cuestión de derecho, limitan sustancialmente los daños reclamados.*

El 24 de febrero de 2026, la Sra. Rodríguez presentó su Oposición a *Certiorari*. Con el beneficio de la comparecencia de las partes, procedemos a discutir el marco legal pertinente a la controversia ante nuestra consideración.

**-II-**

**-A-**

El auto *Certiorari* es un recurso extraordinario, mediante el cual un tribunal de jerarquía superior puede revisar a su discreción una determinación de un tribunal inferior. *Caribbean Orthopedics v. Medshape, et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020). La característica distintiva de recurso se asienta en la discreción encomendada al tribunal revisor, para autorizar su expedición y adjudicar sus méritos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 209 (2023); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 338 (2012).

En aras de orientar la discreción judicial, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita aquellas circunstancias que permiten la intervención interlocutoria de este Tribunal de Apelaciones para revisar ciertas resoluciones, entre ellas, la denegatoria de una moción de carácter dispositivo. Nuestra autoridad se activa de mediar alguna de las instancias contempladas en la precitada regla procesal. Ello, pues, la Regla 52.1 establece que ciertos dictámenes interlocutorios pueden: (1) afectar sustancialmente el resultado del pleito, (2) tener efectos limitativos para la defensa o reclamación de una parte, o (3) conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847-848 (2023) (citando a R. Hernández Colón, <u>Práctica jurídica de Puerto Rico: derecho procesal</u> *civil,* 6a ed., San Juan, Ed. LexisNexis, 2017, Sec. 5515a, a la pág. 533).

No obstante, una vez se adquiere jurisdicción a tenor con la Regla 52.1 de Procedimiento Civil, *supra,* la expedición del auto y su adjudicación en los méritos es discrecional. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 96 (2008). En armonía con lo

anterior, la Regla 40 del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), delimita los siguientes criterios para ponderar la expedición del auto solicitado:

> A. *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.*
>
> B. *Si la situación de hechos planteada es la más indicada para analizar el problema.*
>
> C. *Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.*
>
> D. *Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.*
>
> E. *Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
>
> F. *Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
>
> G. *Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*

Nótese que, la regla precitada facilita que la evaluación respecto a la expedición del recurso no transcurra en el vacío ni en ausencia de otros parámetros. *IG Builders et al. v. BBVAPR, supra*, a la pág. 338; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). Así pues, al examinar si procede la expedición del caso nos corresponde ser cuidadosos y conscientes de la naturaleza de la controversia ante nuestra consideración. *Torres González v. Zaragoza Meléndez, supra*, a la pág. 849. Por la naturaleza extraordinaria de este recurso, no debemos intervenir en las determinaciones de hechos del Tribunal de Primera Instancia, salvo que se pruebe que actuó con prejuicio o parcialidad o incurrió en craso abuso de discreción o en error manifiesto. *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736

(2018). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

**-B-**

La sentencia sumaria es el mecanismo adecuado para resolver aquellos casos que no ameritan la celebración de un juicio por no existir duda sobre hechos esenciales. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR ___ (2025); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015). Este recurso propicia la solución justa, rápida y económica de las controversias. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *González Santiago v. Baxter Healthcare*, 202 DPR 281, 290 (2019). Es decir, permite la ágil disposición de los casos sin la celebración de un juicio, sujeto a la inexistencia de controversias genuinas de hechos materiales. *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 979 (2022). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Oriental Bank v. Caballero García*, 212 DPR 671, 679 (2023).

Ahora bien, el mecanismo de sentencia sumaria no aplica a todos los escenarios. Su concesión corresponde cuando: (1) existen hechos materiales no controvertidos, (2) el promovido no puede prevalecer ante el derecho, y (3) el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Íd.*; *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012). Asimismo, como regla general, "no es aconsejable utilizar la moción de sentencia sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad es esencial y está en disputa". *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010) (citando a *Soto v. Hotel Caribe Hilton*, 137 DPR 294 (1994)). Sin embargo, lo señalado previamente "no impide utilizar

el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención [...] cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales". *Íd.*

En particular, la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, faculta la presentación de una solicitud de sentencia sumaria respaldada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Cónsono con lo anterior, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36. 3, instaura los requisitos de forma respecto a esta moción y su oposición. *Universal Ins. y otro v. ELA y otros*, 211 DPR 455, 472 (2023). El inciso (a) de la precitada disposición reglamentaria establece las siguientes formalidades que debe exhibir la solicitud de sentencia sumaria:

> (1) *Una exposición breve de las alegaciones de las partes;*
> (2) *los asuntos litigiosos o en controversia;*
> (3) *la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;*
> (4) *una relación concisa y organizada en párrafos enumerados, de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen los mismos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;*
> (5) *las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y*
> (6) *el remedio que debe ser concedido.* 32 LPRA Ap. V, R. 36. 3(a).

Por su parte, quien presente el escrito de oposición a la sentencia sumaria también tiene que cumplir con los requisitos de la Regla 36 de Procedimiento Civil, *supra. Oriental Bank v. Caballero García, supra,* a la pág. 680. Así que, no podrá

descansar solamente en aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar de forma específica. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. 32 LPRA Ap. V, R. 36.3(c). Por ello, no debe asumir una actitud pasiva ni descansar en las aseveraciones o las negaciones. *Íd.*; *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Al contrario, la parte opositora debe establecer aquellos hechos controvertidos de la siguiente manera:

> *En la oposición a una solicitud de sentencia sumaria, el promovido debe, como parte de su carga, puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte una sentencia sumaria en su contra. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición según exige la Regla 36.3. En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. León Torres v. Rivera Lebrón, 204 DPR 20, 44 (2020) (citas omitidas).*

No obstante, es menester explicar que, el hecho de que la parte promovida no presente prueba que controvierta la evidencia, no implica que la moción de sentencia sumaria procederá automáticamente, si efectivamente existe una controversia sustancial sobre hechos materiales. *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 351 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 337 (2021). En este sentido, cualquier inferencia que surja de los hechos incontrovertidos, debe efectuarse de la forma más favorable a la parte promovida. *Const. José Carro v. Mun. Dorado,* 186 DPR 113, 130 (2012).

Si una parte resulta inconforme con el dictamen de sentencia sumaria, tiene derecho a recurrir a la etapa apelativa. En estos casos, nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. *Cruz, López v. Casa Bella y otros,* 213 DPR 980 (2024); *Birriel Colón v. Econo y otro, supra,* a la pág. 91. Es decir, ostentamos la

facultad de examinar *de novo* el expediente y aplicar los criterios que exigen la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia interpretativa. *Roldán Flores v. M. Cuebas et al.*, *supra*, a la pág. 679. Empero, nuestra autoridad revisora es limitada, pues solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015). Ello, pues, carecemos de facultad para adjudicar hechos materiales en disputa, toda vez que esa tarea corresponde al foro primario. *Íd.*, a la pág. 115; *Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

Los criterios a seguir por este tribunal, al atender la revisión de una sentencia sumaria dictada por el foro primario, han sido enumerados con exactitud por nuestro Tribunal Supremo. *Roldán Flores v. M. Cuebas et al, supra*, a la pág. 679. A tenor con lo anterior, el Tribunal de Apelaciones debe:

> *1) examinar de novo el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, supra, y la jurisprudencia le exigen al foro primario;*
>
> *2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, supra;*
>
> *3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y*
>
> *4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.*

**-C-**

Luego de aprobar la Ley de Reforma y Control de Inmigración de 1986 (IRCA), el Congreso de Estados Unidos enmendó la Ley de Inmigración y Nacionalidad (INA) e implementó un sistema de sanciones severas para los patronos que dieran trabajo a personas

extranjeras sin autorización para laborar en Estados Unidos. *Jiménez Soto v. Carolina Catering Corp.*, 2025 TSPR 3, 215 DPR __ (2025); Véase 8 USC sec. 1324a. Así, corresponde a todo patrono verificar la autorización legal de empleo de sus trabajadores en Estados Unidos, examinando la documentación aceptable y el cumplimiento del "Formulario I-9". *Íd.* a la pág. 10; Véase 8 USC sec. 1324a(b); 8 CFR sec. 274a.2(a)(2). En Puerto Rico, la Ley Núm. 48 de 29 de mayo de 1973 prohíbe a los patronos emplear a personas extranjeras a sabiendas de que residen ilegalmente en el país, e impone penalidades por la violación de dicha disposición. 29 LPRA sec. 153 y 154.

En particular, la sección 1324a del Título 8 del United States Code dispone lo siguiente:

> *(6) Good faith compliance*
> *(A) In general*
> *Except as provided in subparagraphs (B) and (C), a person or entity is considered to have complied with a requirement of this subsection notwithstanding a technical or procedural failure to meet such requirement if there was a good faith attempt to comply with the requirement.*
> *(B) Exception if failure to correct after notice*
> *Subparagraph (A) shall not apply if-*
> *(i)* ***the Service*** *(or another enforcement agency)* ***has explained to the person or entity the basis for the failure,***
> *(ii)* ***the person or entity has been provided a period of not less than 10 business days (beginning after the date of the explanation) within which to correct the failure, and***
> *(iii)* ***the person or entity has not corrected the failure voluntarily within such period****. 8 USC sec. 1324a(b)(6)(B)* (Énfasis suplido).

**-D-**

Nuestro ordenamiento jurídico prohíbe el despido sin la existencia de justa causa. A esos fines, la Sec. 4 de la Ley Núm. 3 de 13 de marzo de 1942, según enmendada, conocida como la Ley de Protección de Madres Obreras, 29 LPRA sec 469 establece lo siguiente respecto al despido de una trabajadora embarazada sin que exista justa causa:

*El patrono no podrá, sin justa causa, despedir a la mujer embarazada o que adopte a un menor a tenor con la legislación y procedimientos legales vigentes en Puerto Rico o en cualquier jurisdicción de los Estados Unidos de América. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo.*

Por tanto, en este contexto, el patrono incurrirá en responsabilidad civil, salvo que demuestre que existía una justa causa para su despido, según lo establece el inciso (a) de la referida sección. Sobre este particular, la Sec. 8 de la Ley Núm. 3-1942, *supra*, precisa que, obrera es "toda mujer empleada mediante sueldo, salario, jornal, contrato a tiempo determinado o cualquiera otra manera de compensación en cualquier oficina, establecimiento comercial o industrial o empresa de servicio público" (Citas omitidas). 9 LPRA sec. 473.

Así, pues, en aras de salvaguardar los derechos de estas trabajadoras, "la Ley Núm. 3, *supra*, establece una presunción de despido injustificado, la cual impone sobre el patrono el peso de establecer que existieron razones justificadas independientes al embarazo para el despido de la empleada". *López Fantauzzi v. 100% Natural*, 181 DPR 92, 116-117 (2011). Respecto a esta carga probatoria, es menester explicar que, lo determinante no es si el despido fue motivado por la condición de embarazo de la demandante, sino si estando embarazada, el patrono la despidió por causa injustificada. *Santiago v. Oriental Bank & Trust*, 157 DPR 250, 258 (2002). Por tal razón, "el desconocimiento por parte del patrono del estado de embarazo de la empleada despedida constituye una defensa afirmativa frente a una reclamación en su contra bajo esta ley". *Íd.*

Nuestro más alto foro ha expresado que, "aunque la Ley Núm. 3-1976, *supra*, crea una presunción de que el despido de una mujer obrera, mientras estaba embarazada, es injustificado, '[s]i el patrono desconocía del hecho del embarazo, la ley aplicable

es la de despido injustificado, Ley Núm. 80, *supra,* mientras que si lo sabía, el estatuto aplicable es la Ley de Madres Obreras'". *López Fantauzzi v. 100% Natural, supra,* a la pág. 120 (citando a *Santiago v. Oriental Bank & Trust, supra,* pág. 264). Además, "la carga probatoria para establecer dicha defensa corresponde al patrono, y la obrera, a su vez, tendrá la oportunidad de demostrar —mediante evidencia directa o circunstancial— que el patrono conocía del embarazo o que dicho conocimiento le era imputable". *Íd.* a la pág. 120.

De manera que, al amparo de esta ley surgen dos protecciones relacionadas al despido de una empleada embarazada: "(1) la prohibición del despido sin justa causa, que se refiere al concepto justa causa bajo las leyes laborales, y (2) la prohibición de despido por merma en la producción como consecuencia del embarazo, lo cual, en el caso de una mujer en estado de gestación, no constituye justa causa para el despido". (Citas en el original omitidas) *Íd.* a la pág. 118. Entonces, a tenor de la Ley Núm. 80-1976, *supra,* entre otros criterios, "no se considerará despido por justa causa aquel que se hace por mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento". *Srio. del Trabajo v. G.P. Inds. Inc.,* 153 DPR 223, 241 (2001).

-III-

En el recurso presente, Stryker nos solicita que revoquemos la Sentencia Parcial respecto a la denegatoria de desestimación de la reclamación presentada por la recurrida, al amparo de la Ley Núm. 3-1942, *supra.* En esencia, el peticionario aduce que incidió el foro primario al concluir que existían controversias de hechos cuando las mismas son de derecho, así como al no aplicar la defensa de falta de conocimiento bajo la Ley Núm. 3-1942, *supra.* Además, el peticionario sostiene que erró el foro primario al no

desestimar la reclamación bajo la Ley Núm. 3-1942, *supra,* cuando de sus propias determinaciones de hechos y la prueba admisible incontrovertida surge que Stryker tiene justa causa para el despido. Finalmente, éste aduce que, erró el TPI al ignorar las ofertas incondicionales de empleo notificadas por Stryker a la Sra. Rodríguez, posterior a su despido lo que limita los daños reclamados. Veamos.

Luego de examinar *de novo* la solicitud de sentencia sumaria presentada por Stryker, así como su respectiva oposición y los anejos que las acompañan, a la luz de lo resuelto por el Tribunal Supremo de Puerto Rico en el caso de *Meléndez González et al. v. M. Cuebas, supra,* resolvemos que ambas mociones cumplen con los criterios que dimanan de la Regla 36.3 de Procedimiento Civil, *supra.* A su vez, nos corresponde evaluar la existencia de algún hecho material controvertible y la aplicación del derecho correspondiente. Para ello, sólo podemos tener ante nuestra consideración aquella evidencia presentada ante el Foro de Instancia.

El primer y segundo señalamiento de error serán discutidos de manera conjunta. De entrada, conviene enfatizar que el foro primario concluyó que, "el Tribunal no tiene claro si Stryker tenía conocimiento o no del embarazo de la Sra. Rodríguez. Es importante mencionar que es Principio Rector de los Tribunales la búsqueda de la verdad, por lo que lo correcto es la celebración de una Vista Evidenciaria". Lo anterior constituye una controversia de hecho, más no de derecho. Por otro lado, en cuanto a la defensa de falta de conocimiento, resaltamos que la carga probatoria para establecer dicha defensa corresponde al peticionario, y la Sra. Rodríguez, a su vez, tiene la oportunidad de demostrar a través de evidencia directa o sustancial que Stryker conocía del embarazo o que dicho conocimiento le era imputable.

*López Fantauzzi v. 100% Natural, supra,* a la pág. 120. En ese sentido, la recurrida sostiene que, además de haberle informado su embarazo al peticionario, su condición de embarazo es notable ante todos debido a su estado físico. Por tanto, el primer y segundo señalamiento de error no se cometieron.

En cuanto al tercer señalamiento de error resaltamos lo siguiente. Surge del expediente que, el 4 de diciembre de 2023 se le solicitó a la Sra. Rodríguez los documentos oficiales requeridos por ley para corroborar su identidad y así poder completar las formas requeridas bajo las leyes estatales y federales, incluyendo el Formulario I-9. Siendo ello así, se sometió dicha información en los programas correspondientes para su verificación.[6] Posteriormente, el 20 de diciembre de 2023 el Sr. Gabriel Rodríguez y la Sra. Rodríguez sostuvieron una reunión en la cual éste le indicó que exista un error con su información. Luego, el 8 de enero de 2024 fue despedida.

Es menester precisar que, "lo determinante en estos casos no es si el despido fue motivado por la condición de embarazo de la demandante, sino *si estando embarazada* la demandante, el patrono la despidió por *causa injustificada*". *López Fantauzzi v. 100% Natural, supra,* a la pág. 117. Ahora bien, del propio documento intitulado Notificación de Acción Posterior, emitido por E-Verify, se establece que la fecha de la discrepancia corresponde al **4 de diciembre de 2023**.[7] Asimismo, se desprende con claridad que la causa del error radica en la información provista por Stryker. En la aludida notificación se indica que, "[l]a información que su empleador ingresó en E-Verify a partir de su Formulario I-9 no coincide con los registros disponibles en el Departamento de Seguridad Nacional (DHS), lo que resultó en una discrepancia,

---

[6] *Véase,* SUMAC TPI, Entrada Núm. 33; Anejo A Parte I a la pág. 71.
[7] *Véase,* SUMAC TPI, Entrada Núm. 33; Anejo A Parte II a la pág. 22.

también conocida como una No Confirmación Tentativa".[8]   A su vez, se notificó que el "Motivo de su discrepancia" es que **"[l]a información ingresada sobre este empleado no coincide con los registros de la Agencia Estatal de Vehículos de Motor**".[9] (Énfasis suplido).

En resumen, conforme a la Notificación de Acción Posterior, corresponde al empleado decidir si resolverá la discrepancia descrita.   Por ello, se incluyen dos encasillados para que el empleado marque su decisión, así como se detalla un aviso dirigido al empleado que establece que "**[s]i no notifica su decisión al empleador antes del 12/18/2023**, el empleador **puede** cerrar el caso".[10]  (Énfasis suplido).  La sección sobre instrucciones para los empleadores indica que, "**[s]i el empleado no ha decidido tomar medidas antes del décimo día laboral** del gobierno federal después de que E-Verify haya emitido esta notificación, E-Verify no puede confirmar que el empleado está autorizado a trabajar en Estados Unidos. Usted debe cerrar este caso, E-Verify emitirá una No Confirmación Final, y usted **podrá** dar por terminada la relación laboral".[11]  (Énfasis suplido).

En coherencia con lo anterior, el 2 de enero de 2024 la líder de recursos humanos, la Sra. Alisa Doyle, le indicó al Sr. Gabriel Rodríguez lo siguiente: "I don't see that this has been addressed, therefore Zuleyka's employment needs to be terminated. **If you have communicated the requested information to Zuleyka and received a response to resolve, please let us know today so**

---

[8] *Íd.*
[9] *Íd.*
[10] *Véase*, SUMAC TPI, Entrada Núm. 33; Anejo A Parte II a la pág. 22.
[11] *Véase*, SUMAC TPI, Entrada Núm. 33; Anejo A Parte II a la pág. 24. En el sitio web oficial del gobierno federal de E-Verify, se indica que los empleadores que utilizan E-Verify deben seguir las reglas y responsabilidades de ésta. De igual forma, se especifica que un empleador que participa en E-Verify no debe "despedirlo o tomar cualquier otra medida adversa en su contra (como negar abajo, retrasar capacitación, retener el pago o asumir de algún modo que no está autorizado para trabajar) debido a su decisión de tomar medidas para resolver una discrepancia o porque su caso de discrepancia aún está pendiente con el DHS o la SSA". (traducción suplida) E-Verify, *Employee Rights and Responsibilities* (3 de febrero de 2025), https://www.e-verify.gov/employees/employee-rights-and-responsibilities.

**that we can update the case with the Department of Homeland Security.** Otherwise, you will need to terminate the employment **if you communicated the issue** we relayed to you **and Zuleyka has chosen not to resolve**".[12]  (Énfasis y subrayado suplido).

En ese sentido, el 20 de diciembre de 2023 la Sra. Rodríguez entregó por segunda ocasión su licencia de conducir y seguro social, según fue solicitado por el Sr. Gabriel Rodríguez.[13]  Nótese que éste último le comunicó a la Sra. Rodríguez que desconocía la razón de la discrepancia en cuestión.[14]  No obstante, dicha discrepancia se debía precisamente a que el número de licencia de conducir de la recurrida fue ingresado erróneamente en la Sección 2 del Formulario I-9, la cual es responsabilidad del patrono completar.  El número de licencia de conducir ingresado en dicho encasillado corresponde a otra empleada con el mismo nombre de la recurrida.[15]  Dicho formulario está firmado por el Sr. Gabriel Rodríguez con fecha de 4 de diciembre de 2023.[16]

Por otro lado, resulta evidente que la Notificación de Acción Posterior fue entregada a la Sra. Rodríguez por primera vez el 8 de enero de 2024, fecha en que fue despedida.  En consecuencia, subsiste duda sobre el motivo u arbitrariedad del despido de la recurrida. Por tanto, el tercer señalamiento de error no fue cometido.

Por último, prescindimos de analizar el cuarto error señalado en los méritos por ser éste prematuro.

**-IV-**

Por los fundamentos antes expuestos, los que hacemos formar parte de este dictamen, expedimos el auto de *Certiorari* y

---

[12] *Véase*, SUMAC TPI, Entrada Núm. 33; Anejo C a la pág. 3.
[13] *Véase*, SUMAC TPI, Entrada Núm. 33; Anejo A Parte I (*Deposición tomada a la Sra. Rodríguez el 2 de julio de 2025*) a la pág. 76.
[14] *Íd.* a la pág. 71.
[15] *Íd.* a la pág. 88.
[16] *Véase*, SUMAC TPI, Entrada Núm. 33; Anejo A Parte I (*Deposición tomada a la Sra. Rodríguez el 2 de julio de 2025*) a la pág. 88; Anejo A Parte II a la pág. 51.

confirmamos la Sentencia Parcial emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones